IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RALPH MLASKA, B10587,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 3:15-cv-0918-MJR-SCW** |
| ) | |
| **LOUIS SCHICKER,** ) | |
| **WEXFORD HEALTH SOURCES,** ) | |
| **ALFONSO DAVID,** ) | |
| **MARY MILLER,** ) | |
| **CAMILLA ETIENNE,** ) | |
| **ROBERT HILLIAD,** ) | |
| **SHERRI STOKES LYNN,** ) | |
| **KURTIS HUNTER,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I. Introduction

This is a prisoner civil rights lawsuit involving events that occurred at Shawnee Correctional Center ("Shawnee"), a facility within the Illinois Department of Corrections ("IDOC") prison system. Plaintiff's claims allege that he has received inadequate medical care for penile and testicular pain. He brings his claims against the Defendants pursuant to 42 U.S.C. §§ 1983 and 1985. After conducting an initial screening of this case pursuant to 28 U.S.C. § 1915A, this Court allowed the case to proceed against Defendants Louis Schicker, Wexford Health Source, Alfonso David,

Marry Miller, Camilla Etienne, Robert Hilliad, and Sheri Stokes Lynn, as well as Kurtis Hunter (in his official capacity only) (Doc. 16). Service proceeded, and multiple Defendants sought a stay of the case to await the conclusion of state court proceedings dealing with strikingly similar or identical claims and parties (Docs. 40, 45). On March 2, 2016, this Court granted a stay to await the resolution of state court proceedings (Doc. 62).

While the case was stayed, the Court addressed numerous piecemeal filings by Plaintiff whereby he sought various injunctive and emergency relief, as well as motions attempting to remove the stay. The stay was lifted in April 2016 upon Defendants' notification to the Court that the state court proceedings had concluded (Dkt. entry 79). The Defendants then began filing various dispositive motions to resolve the case on the basis of *res judicata*, or summary judgment (Docs. 91, 93). Before the Court could address the merits of those motions, the case was stayed for a second time because apparently there were issues about the finality and appealability of the state court litigation (Doc. 106). At that time, the Court denied without prejudice the motions for *res judicata* and summary judgment (*Id.*).

During the course of the second stay, Plaintiff filed motions seeking to have the case proceed before this Court despite the unsettled nature of state court proceedings (Docs. 112, 113). The Court, via a detailed text order, warned the Plaintiff of the potential risks

and consequences for his perpetual filings, cautioning him that such conduct could result in sanctions (Dkt. entry 114).

In late November 2016, the Defendants sought an extension of the stay, or in the alternative, a ruling dismissing the matter on *res judicata* grounds (Docs. 115, 116). The Defendants' motions informed the Court that the state court proceedings had reached finality, absent an appeal by the Plaintiff of those matters. In light of the update, the Court directed the Plaintiff to respond on the very narrow issue of whether or not he intended to pursue an appeal in state court so that this Court could best determine if it was appropriate to lift the stay, or if the case should await further disposition in state court (Dkt. entry 117). The Plaintiff responded by filing multiple verbose documents that made it extremely unclear what he intended to do in state court, and he ultimately sought an extension of time to craft his state court strategy as it were (Docs. 118, 120). The Court reviewed the filings and directed the Plaintiff to file a brief explicitly addressing his intention to appeal in state court, and including specifics such as case numbers and deadlines (Dkt. entry 121). The Court strongly cautioned that a failure to do so, or a brief not tailored to the Court's inquiry could result in dismissal (*Id.*).

On December 30, 2016, the Plaintiff filed a document titled "Judicial Notice Instanter" (Doc. 122)—the only document he timely filed in response to the Court's directive instructing him to provide specifics about any state court appeal. The succinct four-paragraph document indicated:

> (1) On 12-19-2016 Plaintiff sent a post judgment motion indicating he MAY voluntarily dismiss defendants upon hearing regarding issue of 'frivolous' both of which hinder state court appeal.
> (2) In response to this court stating it would not issue injunction, Plaintiff has filed a notice of appeal in state court on 12-22-2016.
> (3) Wherefore since plaintiff has to dismiss defendants to make it appealable plaintiff requests this court consider any dismissal in this court without prejudice and/or without strike.
> (4) Plaintiff requests this court stay involved until resolution of state appeal as failure to follow specialists recommendations and practice/policy/failure to supervise by Wexford remain live and in controversy.

(*Id.*). Subsequently, on January 19, 2017, the Plaintiff filed a second document styled as a response to this Court's Order (Doc. 121) directing him to provide specifics about his appellate prospects in state court (Doc. 124). In the document, he claims that he did not receive this Court's Order (Doc. 121) until January 13, 2017, after the date set by that order for filing a brief had already elapsed (Doc. 124 at 1-2). Plaintiff claims that he has no documentation of any efforts to take an appeal in state court, and yet to the contrary, he also indicates that he filed a dismissal of any appeal pursuant to Illinois Supreme Court Rule 309.

Rule 309 states that "the trial court may dismiss the appeal of any party (1) on motion of that party or (2) on stipulation of the parties. A copy of the order of dismissal filed in the trial court shall be forwarded by the clerk to the reviewing court within five days after the entry of such order." Thus, based on the plain language of the precise Rule Plaintiff identifies, there would necessarily be a document evidencing his voluntary dismissal of any state court appeal. Yet, Plaintiff did not file such a

document, nor did he provide his trial court case number, the date of the dismissal, or any other verifying information.

The Defendants' Motions for Extension of Stay or disposition on *res judicata* grounds (Docs. 115, 116), as well as the Plaintiff's Notice Instanter (Doc. 122) and the Plaintiff's Response to Doc. 121 (Doc. 124) are now before the Court for a ruling. For the reasons stated herein, the Court finds that it is appropriate to dismiss this matter in its entirety.

II.     **Legal Analysis**

Federal Rule of Civil Procedure 41(b) provides that a court may dismiss an action with prejudice "if the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure" or any court order. *See Salata v. Weyerhaeuser Co.,* **757 F.3d 695, 699 (7th Cir. 2014) (quoting** *Maynard v. Nygren,* **332 F.3d 462, 467 (7th Cir. 2003)**. Though such a dismissal should be used infrequently, the Seventh Circuit has found on numerous occasions that such a dismissal is warranted if a plaintiff's conduct frustrates a resolution of the case on the merits in a timely fashion. *See Salata,* **757 F.3d at 699-700 (collecting cases that were dismissed because plaintiffs repeatedly failed to comply with discovery schedules and other court orders).** In *Daniels v. Brennan***, 887 F.2d 783, 786 (7th Cir. 1989),** the Seventh Circuit held that, in the certain circumstances, it may be appropriate for a court to dismiss a case for substantially dilatory conduct on behalf of the plaintiff.

The Seventh Circuit has identified a number of factors to be considered before dismissal, particularly in the context of a dismissal for failure to prosecute. The factors are, "the frequency of the plaintiff's failure to comply with deadlines; whether the responsibility for mistakes is attributable to the plaintiff herself or to the plaintiff's lawyer; the effect of the mistakes on the judge's calendar; the prejudice that the delay caused to the defendant; the merit of the suit; and the consequences of dismissal for the social objectives that the litigation represents." ***Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011) (collecting cases).** Dismissal is ultimately within the discretion of the district court, and the appropriateness of such an action may also turn on the availability of other less serious measures. *Id.* "When there is a clear record of delay or contumacious conduct" or the record reveals explicitly "dilatory conduct," dismissal may well be appropriate. *See Kasalo*, **656 F.3d at 661;** *Daniels*, **887 F.2d at 786.**

Here, many, if not all, of the factors weigh in favor of dismissing this case. Despite the Court issuing multiple warnings that frequent and voluminous filings prevent the Court from reaching the core of the dispute, the Plaintiff has continuously filed verbose and incoherent pleadings. This failure to respect the Court's time by flooding the Court with incoherent pleadings is either akin to, or perhaps more serious than, a failure to comply with deadlines because the continuous filing contradicts this Court's directions to Plaintiff and it frustrates the Court's ability to tend to this matter or others in a timely

fashion. This problematic behavior is entirely attributable to the Plaintiff himself because he is proceeding *pro se*.

Surely *pro se* plaintiffs deserve lenience, and they are not expected to plead matters in an artful matter. However, Plaintiff's conduct in this particular case exceeds the bounds of lenience that this Court is willing to recognize. Here, the Court sees a pattern of the Plaintiff spinning and bending facts in an effort to drag this case out indefinitely to avoid a result he is unhappy with. He appears intent on playing the state court against the federal court, saying in some of his filings that he appeals the actions of *this Court* with the state court because he does not think this Court is willing to treat him fairly, while in other pleadings he says he believes the *state court* will not treat him fairly, so he will have to turn away from it and file matters solely with this Court. This sort of circuitous back-and-forth causes the case to drag on, without ever allowing a resolution. When put to the paces of directly demonstrating an intent to appeal or to not appeal in state court, the Plaintiff most recently has attempted to tell this Court he has dismissed any state court appeal pursuant to an Illinois Supreme Court Rule, and yet he says there is zero evidence of this dismissal. This excuse appears disingenuine, and is another attempt to drag the case between the state and federal system until he can get his way.

This Court explicitly warned Plaintiff that if he did not file specifics of state court case numbers, appellate filings, etc., his case could be dismissed. Plaintiff's latest filing

does not comply with this directive. Based on the Plaintiff's conduct, this Court finds that the factor of timely and compliant filings weighs in favor of dismissing the case.

As to the possible prejudice caused to the Defendants, Plaintiff's conduct is undoubtedly prejudicial because his constant filings require the attention and occasional response of defense counsel. What is more, his behavior in the context of this case is obstructing the finality of judgment against these defendants in multiple forums—state and federal court. Due to Plaintiff's apparent unwillingness to be forthcoming about his intent to appeal in state court, or his attempts to leverage the 'opportunity' to appeal in exchange for the type of medical care he wants, the Defendants continue to be subject to this litigation with no clear end in sight. This conduct is abuse of the legal process. Plaintiff's circuitous conduct and his efforts to juggle multiple suits against the same parties in multiple courts at once is unacceptable.

Dismissal of this case will not harm the social objectives served by civil rights litigation because, so far as this Court can tell, the Plaintiff has been afforded multiple opportunities to raise challenges to the quality and type of medical care he is receiving before courts of law. Not only does he have a state court case against the same or similar defendants as the present case, but Plaintiff also has brought the same or similar Eighth Amendment claims against other institutions he has been incarcerated in, to no

avail.[1] Dismissal of this case will not leave Plaintiff without any recourse because he can continue his action in state court, and he can continue to seek medical care from the institution where he is currently incarcerated. The Eighth Amendment rationale for medical care in prison is that inmates are entitled to receive professionally reasonable medical care, not the precise type of care they personally believe is appropriate or desirable. See e.g. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) **(noting that medical care does not violate the Eighth Amendment unless "no minimally competent professional would have so responded under those circumstances");** *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) **("disagreement with a doctor's medical judgment is not deliberate indifference").** Although the Court is not reaching the merits in disposing of this case, the extensive litigation history this Plaintiff has addressing his medical issues tends to suggest that he is receiving some variety of care for his needs. His track record of litigating also suggests that he is familiar enough with the legal system that if some major harm should befall him in the future, he will be well aware of the channels through which he may attempt to seek redress.

The Court warned the Plaintiff multiple times about the potential consequences of dilatory or vexatious conduct, the Plaintiff has not ceased or corrected this conduct, and

---

[1] *Mlaska v. Shah*, 428 Fed. App'x 642 (7th Cir. 2011); *Mlaska v. Talbot*, 571 Fed. App'x 483 (7th Cir. 2014); *Mlaska v. S.A. Godinez,et al.,* Case No. 2015-MR-3, Sangamon County Court, Illinois.

the Court now finds that Plaintiff's conduct has been of a sufficiently serious nature to warrant dismissal on these grounds.

### III.   Pending Motions

Plaintiff has motions pending for injunctive relief (Docs. 4 and 100), appointment of counsel (Doc. 13), declaratory judgment (Doc. 14), mandamus (Doc. 84), judicial notice (Doc. 103), and access to the courts (Doc. 118). These motions are verbose, and many contain lengthy attachments. In light of the Court's ultimate disposition of this case, the Court finds it unnecessary to expend time and effort addressing each and every one of these documents individually. Thus, all pending motions are hereby DENIED consistent with the dismissal of this case.

### IV.   Conclusion

In light of the foregoing analysis, Plaintiff's Complaint is hereby **DISMISSED** in its entirety with prejudice as to all claims against all named Defendants.[2]

All pending motions are hereby **DENIED** (Docs. 4, 13, 14, 84, 100, 103, 118).

---

[2] The Court is NOT assessing a strike in this matter, as is contemplated by 28 U.S.C. § 1915(g), because the primary basis for this dismissal is Plaintiff's failure to comply with this Court's orders. Although such a failure could fairly be construed as "frivolous or malicious"—in line with the language of 28 U.S.C. § 1915(e)(2)—this Court will not so characterize the conduct because this dismissal was not reached with an eye towards those particular statutory standards. However, the Plaintiff should heed this dismissal with great caution, and should be aware that if he were to refile identical or similar claims at a future date—such a filing may immediately be subject to dismissal with a strike. *See e.g. Turley v. Gaetz*, 625 F.3d 1005, 1008-09 (7th Cir. 2010) (discussing the parameters for assessing a strike at length).

The Clerk of the Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

DATED: February 7, 2017

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge
